Good morning. Good morning. My name is Brent Wisner. I'm an attorney representing the plaintiff appellants in this matter. May it please the court. Takeda and Lilly's fraudulent conduct of concealing the bladder cancer risk for Actos was deliberate. They knew that if physicians or consumers knew that it could cause bladder cancer, most people wouldn't use it. This fact is supported by the drop in sales following the actual disclosure of the bladder cancer risk in 2011. The plaintiffs in this case were direct victims of that fraud. They paid real money for real prescriptions, directly caused by that failure to disclose the bladder cancer risk. And frankly, they were exposed to a carcinogen against their will. And because of that, Takeda and Lilly made millions. In fact, billions. Now, in the opposition to the opening brief... Counsel, may I ask you, your clients were trying to plead a RICO violation? That's correct, Your Honor. So, what is your best case to support your position that in the context of this case, a direct injury was shown for purposes of RICO? What's your strongest case that's a RICO case? Sure. It's a tie. It would be the Narotan cases out of the First Circuit. It is a variety of cases. Okay, that's not going to help you much here in the Ninth Circuit. So, tell me a case in the Ninth Circuit that is analogous to your clients and there has been a direct injury shown for purposes of RICO in similar circumstances. I don't believe that this issue has ever been decided by the Ninth Circuit directly. I think that the best case then that would be binding on this court would be the fraud being perpetrated on a third party and how that fraud on a third party caused injury to the plaintiff. In Bridge, Your Honor... A direct injury. Exactly. A direct injury. Approximate cause type. Exactly. So, in Bridge, what happened was there was a bidding auction in the county and the defendants created false corporations so that they could get more access to those bids as part of the process. So, they lied to the city and the county. Now, the plaintiff in that case was a competing company who wanted to bid on those those liens and they brought a suit against the defendant saying you committed fraud. And the unanimous Supreme Court said even though the fraud was directed at the county, the most direct victim of that fraud were the people who were not allowed to get those liens, i.e., the plaintiffs. Is it your argument that your clients were the most direct victims of the asserted misrepresentations? Absolutely. I don't... Why wouldn't it be the people who were actually injured who actually contracted cancer? Why wouldn't those be the most direct victims? Well, those are different injuries, Your Honor. RICO doesn't allow for personal injury. It just doesn't. It's an economic injury solely statute. They would have the economic injury of the amount of money they paid for the prescriptions as well as your clients. Sure, but I don't understand when it comes to the RICO violation, what would distinguish principally my plaintiffs, our clients, versus someone who did contract bladder cancer? The fact that the injury that was misrepresented about actually occurred to those individuals and did not actually occur in the case of your plaintiffs. I don't see... Fair enough, Your Honor. That's a fair point. They are definitely more injured, but I don't know why that has any RICO violation. That they contracted bladder cancer does not change their standing to bring a RICO claim in any way. The case law is very clear about that. What gives you standing is an economic injury. Whether or not that economic injury also has with it a personal injury is immaterial to determining who is the most proximately hurt victim here. And frankly, these plaintiffs, these people who bought and used and ingested Actos, they very well might get cancer. I mean, cancer has a very long latency. And we don't know if five years, ten years from now, they ultimately do contract bladder cancer. But don't the cases speak in terms of which are more direct injuries and which are more remote injuries? Absolutely. And then specifically in the context of a pharmaceutical RICO case, there is no more direct injured than the person who paid for that drug because of the fraud. Because... But I thought that in your brief, you focused on the foreseeability of them being injured by getting cancer. We did discuss that it is an important issue. And I think the case law makes that abundantly clear. In Bridge, the court unanimously held, the Supreme Court unanimously held, that it being reasonably foreseeable is something that you must consider in assessing proximate causation under RICO. But it doesn't take the place of the direct injury requirement. I think it's the opposite, Your Honor. I think the focus has to be the directness of the injury. There's no question. Correct. That's what I said. It does not take, it does not supersede the direct injury requirement. That's correct. But I think in assessing directness, Your Honor, you have to consider foreseeability. I mean, the Supreme Court was very clear about that in Bridge. The reason why there was a direct injury in that case was because it was a reasonably, not even reasonably, it was a foreseeable injury. Here, it's way worse. There is not a question about reasonable foreseeability here. It was specifically foreseen. So in the case of, I agree with you, this is kind of an amorphous concept. But in the Supreme Court decision of Hemigroup v. City of New York, the Supreme Court said that proximate cause requires some direct relation between the injury asserted and the injurious conduct alleged. So would you tell me what the direct relation is between the, what do you say is the injury that was asserted in this case? The injury is the payment for a drug that didn't perform or act the way it was purported to do so. And how did the drug for your clients not work the way it was supposed to? What is your allegation in that regard? Sure. They purchased a drug that did not have a risk of bladder cancer. And they got one that did. And that's the simplicity of it. Is your position that had they known that it might cause bladder cancer, they would have bought a cheaper drug? Potentially. Or they would not have bought a cheaper drug. We don't know that, though. Because the doctor had to assess whether or not the risk of bladder cancer was worth still taking the drug. So that's why I have some difficulty with the direct injury analysis. Because it's not clear that the, that the, your clients would have discontinued that medication. Well, I think there's two issues in that, right? The first one is there's the consumer plaintiffs and then there's the third party payer plaintiffs. The consumer plaintiffs, they ultimately have the final decision about whether or not they take a drug. That is their choice. It is not the doctor's. And they have all put in their complaint and have alleged that if they had known about the bladder cancer risk, they wouldn't have taken it. And this isn't some implausible allegation, right? Eighty percent of sales decreased nationwide when they disclosed the bladder cancer risk. Now, from the third party perspective, it's the same rationale. We're not saying every single doctor wouldn't have prescribed it. We just have to show that at least one wouldn't have. And I believe we can show that. What case says that you only have to show that one doctor would have declined to prescribe it? What case says that? It wouldn't be a case, Your Honor. That would just be the RICO statute. I mean, if you have standing, you have suffered an economic injury. If they paid for one prescription that would not have been paid for, absent the fraud, then they have standing. It's a threshold issue. Now, whether or not we can prove it for the class or for all the plaintiffs, that's  a different question. Third party payers have an independent, can they make an independent decision to not pay? They can. But typically, in this case, they do not. They rely specifically on the decisions of the doctors. And I, and this gets to the second question you asked a second ago that I want to answer. And that is, the Bridge case addresses this exact question, right? In the Bridge case, the plaintiffs defrauded, the defendants defrauded the county. And the whether or not they believe these were legitimate corporations and whether or not they would assign specific liens to them. That decision-making process, notwithstanding, didn't obliviate proximate cause by unanimous Supreme Court. Mr. Wisner, could I ask you, suppose a doctor, even after revelation, as you discussed, continued to prescribe Actos, you would be obligated to pay for it? Depends on the plaintiff. For the third party payer, that's correct, Your Honor. It provided the consumer ultimately filled the prescription. So whether or not you pay for it depends on a certain degree on whether the doctor prescribes it. Well, no. It's sufficient but not complete. It's a logical puzzle, right? So, yes, the doctor has to prescribe it for the consumer. But the patient may say, I still don't want to take it. I read the papers. Precisely. And it causes bladder cancer. I don't want to do that. And this is particularly true because of the population at issue here. This isn't a categorical, across-the-board thing that would apply to any drug, right? These are diabetics who have already an increased risk of bladder cancer by virtue of the condition. And so giving them a drug that increases the risk of bladder cancer is potentially contraindicated. I mean, that's shown in the facts. We allege in pretty serious detail exactly how the sales of this drug plummeted, not just nationwide, but specifically within painters after the disclosure of that information. I mean, the idea of proximate causation, the principle behind it, is to find a judicial limit on liability that is fair and practical and kind of relates to common sense. These defendants deliberately and intentionally knew that concealing this risk would increase sales. And when the truth came out, the sales plummeted. There could be no clearer example of proximate cause. Address for a second, would you please, Lily's argument that they stopped all promotion of this drug in 2006, so therefore damages after 2006 should not be assessed against them. I think that that misunderstands the RICO statute. So the RICO statute is a very liberal and broad reach. Lily, by the way, just for the record, Your Honor, continued to receive royalties for its conduct. They received royalties, but they weren't doing anything actively to promote the drug and misrepresent after 2006. Sure, but the conduct that they did for the near 10 years prior to that. So would you agree that Lily's liabilities cut off as to persons who took the drug on the representations that Lily made before 2006? Absolutely not. And the reason why, Your Honor, is because their conduct prior to 2006 allowed the continued fraud to last through 2011. The district court, Judge Dougherty, who actually oversaw the trial and the MDL for thousands of these personal injury cases, her orders are very clear that both Lily and Takeda played a substantial collaborative role in concealing this risk. In that case that went to trial, you know, they argued the same thing, and Judge Dougherty said that this doesn't apply because of what you've done for the last eight years, hiding this risk. Counsel, do you acknowledge that three of your clients continued to use Actos after the bladder cancer warning was affixed to the label? Do you take issue with that? I'd have to check the exact timing on that, Your Honor. There might be an overlap of a month or two, but all of the plaintiffs, I mean, they were using it for a substantial period of time prior to the warning, and as soon as they were made aware of the risk, they all stopped using it. So I think that's a question of fact, that the jury would have to decide whether or not that warning was material to them, which is the sort of issue there you're harping on, but I don't think... I'm not harping on anything. Well, I'm sorry, not harping. Apologies. I wasn't suggesting that in a bad way. I meant that you're pointing out, and I think that that's a materiality issue that goes straight to a question of fact for a jury, right? Our witnesses, our plaintiffs will take the stand and say, listen, I didn't know about it. As soon as I found out, I stopped using it. Sure, the label changed in the fifth year of me using this drug. I didn't read the label every single time I purchased it, right? I looked at it the first time. So I think there's a clear question of fact argument there. Did you want to save some time for rebuttal? I did, Your Honor. Thank you so much.  Thank you, Your Honors, and may it please the Court. Jonathan Franklin representing the Decatur appellees. I will be speaking for 12 minutes on the issues that are common to all of the appellees. With me at council table is Randall Christian representing Eli Lilley. He will be speaking for three minutes addressing issues that are specific to Lilley. Madam Clerk, will you please put 12 minutes on the clock? Thank you. Thank you, Your Honors. Your Honor, I think Judge Rollinson in particular, I think you did accurately state the law in the Supreme Court. There must be a direct relationship between the alleged RICO predicate acts and the alleged harm. As this Court and others have held in similar cases, due to the numerous intervening actions of independent actors, there is no direct relationship between nondisclosures of scientific information that were allegedly made to the FDA as far back as 1999 about risk factors that did not affect these plaintiffs or those that they paid for, and independent decisions made years later in many cases by doctors to prescribe the drug, by patients to take it, and by third-party payers to reimburse for it. There's a couple of circuits that have gone the other way and have interpreted the Supreme Court case law differently as to direct injury. Can you address those cases? In particular, the First Circuit's case in Ray Norton specifically talks about doctors prescribing and explaining how that's not too attenuated because misrepresentations were made, and as a result of the misrepresentations, the plaintiffs purchased the drugs, placed them in the formulary where they otherwise wouldn't do that. We're talking about the pleading stage. Well, I think that those cases, Naranton and Evandy is the other one in the Third Circuit, those cases actually have fundamentally different allegations than these cases. Those were fraudulent off-label marketing cases. Those were cases where the allegation was that the drug company went out and affirmatively made misrepresentations to doctors, to third-party payers directly about a drug, saying that it was effective for a use that it was not effective for, and that the argument there was that that directly caused the doctors and the third-party payers to either prescribe and pay for the drug. Now, of course, we disagree, I think, with some of the analysis in those decisions, but ultimately, they are fundamentally distinguishable. In this case, we have no direct misrepresentations that were alleged to be made. You have a nondisclosure of information that, again, took place as far back as 1999 to the FDA, and the argument is that had... So, are you saying that where there are direct misrepresentations, then you can proceed with a RICO claim, but where there are material omissions, then you can't? No, I'm saying that the approximate cause analysis is much different in this circumstance than in this. How is it different? Here, they're saying material omissions regarding the efficacy of the drug caused them to purchase the drug, so how is that different from the allegations in the other cases? Because the misrepresentations were... Excuse me, omissions were not made directly to any of the doctors, or you can't make an omission directly to somebody. The duty of disclosure that they're alleging here is one to the FDA. They're saying you should have informed the FDA about certain scientific information. Had you done that, the argument goes, perhaps the FDA would have done something different than it did when it did it, but then you have to look at all of the prescribers, and the key fact here, of course, is that numerous prescribers to this day continue to prescribe Actos to their patients based on their individual circumstances, notwithstanding that there is currently a limited warning label about bladder cancer, and that alone shows that the causation is not direct. Whatever one thinks about the Narantan and Avandia cases, they were different factual circumstances. I think, again, the analysis, I think, was probably not correct on certain of the issues in those cases, but we do have a different circumstance here where the causation is much more attenuated. There were numerous independent, intervening causal factors. First, there were the decisions, as I just said, of physicians to prescribe the drug based on their patient's individual characteristics, and they continue to do that to this day. Second, there are the decisions of the FDA, which is responsible for approving all warning labels on drugs. A manufacturer is not allowed to go out and market a drug, and that was the allegation, in fact, in these other cases, inconsistently with its label. Third, there are the decisions by the formularies to cover the drugs. And fourth, there are independent market, competitive market factors that determine how a drug is prescribed on a day-to-day basis. And there are the decisions of the patients themselves, who obviously have different information given to them at different times about the drugs. So we're talking here about nondisclosures that happened as far back as 1999, and purchases of the drug that were made as much as ten years later. In the Zubandia and in the Narantan cases, we had direct, ongoing fraudulent marketing that was alleged to have directly influenced the defendant's own actions, as well as the physician's actions. So again, I think those in Sidney Hillman, they're not just distinguishable, they're outliers. So the Sidney Hillman, obviously, is another case which also involved fraudulent off-label marketing, and that case, I think, follows the Supreme Court pretty clearly and says, even in those circumstances, there's too many intervening causal circumstances. And I think that one of the key facts here is that... As the information was known and the risks became apparent, isn't that relevant to the question of proximate causation? It may be relevant, Your Honor. It's not dispositive. I think that Judge Breyer's decision in Bextra involved a 65% drop, and in that case, he made clear that that wasn't enough. And in this case, that drop occurred, by the way, very close in time to when this drug went generic. So you had situations where the drop could well have been due to the fact that people are waiting for the drug to go generic. But even notwithstanding that, I think that the painter's allegation is that we can solve all of these problems with a regression analysis. And they admit, and I think this is a key admission on page 55 of their brief, they say, there are dozens of variables that influence ACTO sales beyond the simple nondisclosures that are made in these cases. And I would point the Court to the Supreme Court's decision in Anza. In that case, the Court said there was not proximate cause where a plaintiff had alleged that the defendant's tax fraud scheme had caused its sales to drop. And the Court said the reason it's not proximate is there's too many... It's too much speculation to determine what percentage of the sales would have dropped but for the tax scheme. So too here, in fact, even more strongly here, while there may have been but-for causation, and I think that 80 percent is probably some evidence of but-for causation, the proximate causation is lacking because there are, as the plaintiffs themselves admit, dozens of factors that influence ACTO sales, and I've And so just as in Anza, the causation, even if it's but-for, is not direct. And as Judge Rawlinson pointed out, the people who were directly harmed, who were sold a drug that they claimed caused them personal injury, have sued and have recovered. And I would point the Court in that regard to the Ninth Circuit's decision in Oregon Laborers, which that personal injury plaintiffs are, in fact, the ones that are most primarily best suited to sue. And that was a case involving health payers saying that they should recover for the cost of treating smokers. And the Court said, no, it's the smokers. Even though RICO doesn't allow you to recover for personal injuries, the smokers are the ones who are the most directly harmed. And so we have that here, too. We have plaintiffs in this case are patients who used a drug safely and effectively, as to them, and an insurer that insured those kinds of patients. And they are saying that they want all of their money back because somebody else, other people who are not part of this case, allegedly suffered adverse side effects that were undisclosed. Well, no, their theory is... You're going into your friend's time. Oh, no, he had 12 minutes. I think that she put 12 minutes on the clock. But thank you, Your Honor. I thought, counsel, that their theory is that those folks who developed cancer suffered separate injuries, but this category of plaintiffs also suffered economic injuries. So the two aren't related. That's how I understand their theories. In other words, yes, those people relied on the misrepresentations. They had cancer, and so they got the recovery, so they were directly injured. But the theory here is that we were directly injured as well economically, because we wouldn't have purchased it, but for the misrepresentations and material omissions. Aren't those two distinct categories of injuries that could also fall under direct injury? They may be distinct, but one is certainly more direct than the other. I would, again, point the court to the Oregon laborers case, which is a binding Ninth Circuit precedent. In that case, the court said that the smoker-injured parties, the smokers, were themselves the most directly injured, even though their injury was different from the economic injury that was alleged to have been suffered by the insurance companies. In that case, the court found no approximate causation. So the question is not simply whether there are different kinds of injuries. The question is, who's the most direct? And what the Supreme Court has said is we don't go beyond the, quote, first step. And I would submit that those who were actually injured, and of course we have a standing argument that says that nobody here was injured, but the ones who were actually injured are the ones who have sued and have, in fact, expired. What's your position on the, on whether or not there were plaintiffs who continued to take the drug after the warning label was affixed? Right. So we have, and you can see this at, let me get the sites for you, Your Honor. On pages 58, 59, and 62 of the excerpts of record, you have the three plaintiffs who continued to purchase Actos until, even after the FDA warning label was put on. Was it, opposing counsel says there may have been a little overlap. What's your view on that? Was there a considerable period of time after the affixing of the label, or was it just... In one of the cases, it was, I believe, 15 months after. But I would also point out, and my time is about to expire, I just want to make this... Well, it has expired. You're in the red, but go ahead. Excuse me, as you're counting up. I would just point out that five out of the six plaintiffs don't even allege that they read or relied on the label themselves. So as far as the consumers go, you have no clear understanding as to when they got information. And all of them, not only did they say they didn't rely on it, all of them said they didn't know about the risk even after, even after the FDA had publicized it. So that's another reason why All right. Thank you, counsel. Good morning. May it please the Court. Randall Christian on behalf of Eli Lilly and Company. Lilly agrees with the arguments made by Counsel for Takeda, and those apply equally to Lilly. However, there are additional reasons why this Court can affirm the District Court's decision to dismiss this case as to Lilly. Reasons based upon the implications of fundamentally different and the more limited role that Lilly had as a co-promoter of the drug Actos, wherein it helped assist, market this medication in consistent approval with the FDA's approved labeling. Lilly did not develop Actos. It did not seek FDA approval for Actos. It did not draft the label. Most importantly, it never held the new drug application for Actos. As you've heard, this is basically a failure to warn case. The plaintiff's position is that the Actos label should have said something different about bladder cancer. Because Lilly could not have made those changes or any other changes to the Actos label, those plaintiff's claims as to Lilly are preempted. When you look at the U.S. Supreme Court's decisions in Levine and Minstein together, the question of preemption in the context of prescription drugs boils down to this question. Could the actor being sued for the allegedly inadequate label have independently changed that label to what the plaintiff claims was required? And that question is very easily answered by determining if that actor could take advantage of what's called the changes being affected provision. That is the only mechanism by which a pharmaceutical company can unilaterally and independently change a label without prior FDA approval. And the law is clear. Only the new drug application holder can make this unilateral change. Because Lilly was never the NDA holder, it had no more ability to change the Actos label than any of the manufacturers of generic Actos do today. And that is no ability at all. Any argument that Lilly should have done something else outside of the label regarding the risk of bladder cancer, such as statements to doctors or talking to the FDA about trying to get the label changed, is also contradicted by the mincing court. The FDA's definition of a label is extremely broad and includes any communication with a medical professional regarding the drug. And the mincing court rejected the ability of a plaintiff to allege all the hypothetical, factual scenarios a company could have engaged in that might have led to a label change. The only path to liability contemplated by the U.S. Supreme Court was the NDA holder's responsibility for the label and the unilateral ability to change it, something Lilly could not do. In conclusion, Lilly's role was narrow and limited. It could not have changed the label and it could not communicate outside of the FDA approved labeling. For these reasons and for all the reasons Takeda's counsel identified, we request affirmance of the district court's dismissal. Thank you, Your Honors. Thank you, counsel. Rebuttal? Yes, Your Honor. I'm going to address Lilly's argument just now regarding what they could have done, as well as the allegation made by my colleague about there being a lack of direct fraud here. I would draw the court's attention specifically to excerpts of record on page 150. And on that page, we outline a document, in quote at length, a document from Lilly, and it's a frequently asked questions document to be used with treating physicians during their promotional activity. Question number seven, I heard Actos causes bladder cancer. Is that true? And then Lilly proceeds to give an explanation that there's no risk of bladder cancer. This is back in 1999, after they had identified bladder cancer as the primary risk associated with product's liability involving Actos. Do you agree with Mr. Christian that Lilly did not have the ability to change the label? Sure. It's irrelevant. RICO is not about label changing. It's about acts of racketeering. That's wire fraud and other types of crimes specified by the statute. So what are you saying was the action that Lilly took or did not take that fits within the RICO pleading? Sure. They conspired using the wires to conceal the bladder cancer risk with Takeda. They went into doctor's offices and as I just read to you on excerpts of record 150, they were instructing their sales representatives to mislead physicians about the risk of bladder cancer. None of that has anything to do with the label. And so this idea that because they have no control over the label, they're immune from liability under RICO does not comport with the case law. And frankly, the Palm Wonderful decision specifically states these are two federal statutes. So we're not even talking about preemption. We're talking about potential preclusion. And Congress has never articulated any idea that RICO and the FDCA statutory framework do not comport with each other, because they do. Addressing the last one other issue, and this was specifically the attempt by my colleague to differentiate Neurontinibandia, he kept saying that those cases involved direct misrepresentations. That's simply not true. If you read the two subsequent Neurontin decisions, those involved situations where there was no direct fraud, i.e., to the third party payer at the time of purchase. It was simply the failure, it was the off-label promotion and the conduct done on the side, which is exactly what's at issue here. Each consumer and each third party payer was told that this does not cause bladder cancer, because they knew it would increase sales, and then they subsequently then had increased sales. Are you saying that they're responsible for the entire time that Takeda was acting? I think it would be through the time of the label change, when the truth finally came out, and that was in June, I believe, of 2011. And by the way, just to, sorry, I know I'm out of time. Can I just quickly point out one thing? Yes. You asked questions about the timing of people's continued use after the label change. I just want to clarify that very specific dates of each prescription for each plaintiff, and this is provided at the pleading stage, is on the supplemental excerpts of records, page 28 through 33, and it details the exact dates when actually each prescription was filled, and you'll see that they were within a month or two of, or three or four of the label change. All right. Thank you, counsel. Thank you to all counsel for your helpful arguments in this case. The case just argued is submitted for decision by the court.
judges: Rawlinson, Bea, Nguyen